IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 12-cv-03356-MSK

**DEBORAH M. WOODROW,**

    **Plaintiff,**

v.

**CAROLYN W. COLVIN, Acting Commissioner, Social Security Administration,**

    **Defendant.** [1]

## OPINION and ORDER

**THIS MATTER** comes before the Court on Plaintiff Deborah M. Woodrow's appeal of the Commissioner of Social Security's final decision denying her application for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-33. Having considered the pleadings and the record, the Court

**FINDS** and **CONCLUDES**

**I.    Jurisdiction**

Ms. Woodrow filed a claim for disability insurance benefits pursuant to Title II, asserting that her disability began on September 4, 2007. After her claim was initially denied, Ms. Woodrow filed a written request for a hearing before an Administrative Law Judge ("ALJ"). This request was granted and a hearing was held on June 20, 2011.

---

[1] At the time Ms. Woodrow filed her appeal, Michael J. Astrue was the Commissioner of Social Security. Carolyn W. Colvin is substituted as the Defendant in this action to reflect her designation as Acting Commisioner of Social Security, effective February 14, 2013.

After the hearing, the ALJ issued a decision which found that Ms. Woodrow met the insured status requirements through March 31, 2008.  Applying the five-step disability evaluation process, the Decision also found that: (1) Ms. Woodrow had not engaged in substantial gainful activity since September 4, 2007; (2) she had the following severe impairments: sleep apnea, low back pain, restless leg syndrome, irritable bowel syndrome and headaches; (3) she did not have an impairment or combination of impairments that met or medically equaled any of the impairments listed in 20 C.F.R. Part 404, Subpt. P, Appx. 1 ("the Listings"); and (4) Ms. Woodrow had the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. § 404.1567[2] with the following additional limitations: she was unable to climb ladders, ropes or scaffolds; she could frequently climb ramps and stairs, balance, stoop, kneel crouch and crawl; and she must avoid concentrated exposure to extreme head, cold, flashing or strobe lights, and excessive noise.  Given the above RFC, the ALJ found at Step 4 that Ms. Woodrow could perform her past work as a cashier, assistant manager, receptionist and produce clerk.

The Appeals Council denied Ms. Woodrow's request for review of the Decision. Consequently, the Decision is the Commissioner's final decision for purposes of judicial review. *Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011).  Ms. Woodrow's appeal was timely brought, and this Court exercises jurisdiction to review the Commissioner of Social Security's final decision pursuant to 42 U.S.C. § 405(g).

**II.    Material Facts**

The material facts are as follows.

Mr. Woodrow was born in 1956 and has a high school education.  Her past jobs include cashier, assistant manager, receptionist and produce clerk.  She suffers from back, neck and hip

---

[2] All references to the Code of Federal Regulations (C.F.R.) are to the 2012 edition.

pain, back and leg numbness, as well as depression. However, this Court's primary focus is on her spinal impairments. As Ms. Woodrow's asserted disability period is relatively short (September 4, 2007 to March 30, 2008), her medical history is summarized in three sections.

### A. Medical Records Generated Before September 4, 2007

The first record related to any of Ms. Woodrow's impairments is an x-ray of her cervical spine from August 2005 that showed slight narrowing at C5-C6 with mild encroachment of the neural foramina on the right but no acute abnormalities. During medical appointments in November and December of 2006 and January, February and April of 2007 she complained of left shoulder pain, exacerbated by heavy lifting or excess movement. A December MRI of her left shoulder showed tendinosis with a possible partial tear of the bursal surface of the supraspinatus muscle and tendon. She was given pain medication, a sub-acromial injection and referred to physical therapy. In June of 2007 she told Dr. Roshen that she had lower back pain that was exacerbated by walking or exercising. However, in August a physical examination showed she had normal sensations, motor skills, balance, coordination, reflexes, gait and cranial nerves.

### B. Medical Records from September 4, 2007 to March 30, 2008

Ms. Woodrow was involved in a car accident on September 4, 2007. She was admitted to the hospital complaining of pain in her side and back. An x-ray of her back showed minimal spinal degenerative changes, but she was diagnosed with chest and pelvic contusions. Later in September she went to Dr. Koch, a chiropractor, for an examination. Dr. Koch found that she had whiplash, a shortened leg, limited cervical range of motion, increased inflammation, muscle spasms, facet syndrome, a radicular component, and a positive gorges test. Ms. Woodrow was

diagnosed with cervical and thoracic spine dysfunction, sacrum dysfunction, headaches and radiculitis.  Dr. Koch she recommended traction.

After her accident, Ms. Woodrow saw several chiropractors intermittently from September 2007 to March of 2008 for treatment.  She saw Dr. Koch three more times in late September and early October and was treated with chiropractic adjustment, ice and heat, massage, acupressure, traction and lasers.  Dr. Koch also wrote in a September 29, 2007 treatment note that Ms. Woodrow "will need to be on light duty [*sic*] no more than 12 lbs of weight at one time."

Ms. Woodrow transferred to Dr. Collins in early October.  A physical evaluation performed at that time had the following results: antalgic gait with Minor's sign but normal reflexes; limited range of motion and tenderness in the cervical and lumbar spine; positive Cervical Distraction, Jackson Compression and Straight Leg tests (all indicating radiculopathy and nerve root compression); positive Iliac Compression Test (indicating sacroiliac lesion); and a negative Mankoph's sign (indicating valid test responses with no malingering).  Dr. Collins diagnosed Ms. Woodrow with cervical and lumbar strain and misalignment but gave her a fair prognosis and recommended adjustment, electric stimulation and traction.  At several dozen appointments spread over the next five months, Dr. Collins treated Ms. Woodrow.  At the appointments, Ms. Woodrow periodically reported both improvement and regression in her back, neck and shoulder pain.  Eventually, in March of 2008, Dr. Collins terminated treatment, concluding that no further progress could be made.  At this time, Ms. Woodrow still had limited range of motion and tenderness in her lumbar and thoracic spine.

Ms. Woodrow was seen by two other chiropractors in addition to Dr. Collins.  Dr. Anderson performed a spine x-ray in October of 2007 with the following results: no evidence of

fracture or dislocation; at C5-C6, mild degenerative disk space narrowing and mild bilateral uncovertebral degenerative arthrosis; mild T7-T8 and T8-T9 degenerative disk disease; at L3-L4 and L5-S1, mild to moderate degenerative disk disease and mild bilateral degenerative facet arthrosis; and transitional lumbosacral junction with incomplete attempt of lumbarization of S1. Dr. Gulla, a chiropractic neurologist, performed a physical examination in February of 2008. He diagnosed Ms. Woodrow with several impairments, including cervical, thoracic and lumbopelvic segmental dysfunction and vertebral subluxation with nerve root irritation. He characterized her prognosis as poor to fair with permanent symptoms likely and recommended continued chiropractic manipulative therapy, massage and rehabilitation.

### C. Medical Records Generated After March 30, 2008

After her date last insured, Ms. Woodrow saw a variety of doctors and medical professionals. Dr. Schwartz examined her in April of 2008 and found muscle aches and arthralgia, but no neurological problems and no numbness or weakness in Ms. Woodrow's limbs.

In July of 2008, Ms. Woodrow saw Ms. Gerig for a functional capacity evaluation. Ms. Gerig's examination had the following results: reduced lower extremity strength related to the L5 level on the right; limited cervical and lumbar range of motion; constant right buttock and lateral thigh tingling and numbness; almost all functional tasks exacerbated Ms. Woodrow's lower back pain. She also opined that Ms. Woodrow was not malingering. Ms. Gerig concluded that Ms. Woodrow was limited to lifting 10 pounds or less and carrying 7 pounds or less occasionally, sitting for 3 hours in an 8 hour day, standing for 2 hours in an 8 hour day, walking 1 hour in an 8 hour day intermittently, occasionally balancing, squatting, bending and climbing stairs, and never crouching, stooping, kneeling, crawling or climbing. Ms. Gerig specially noted that Ms. Woodrow could not perform her previous job as a produce clerk.

Dr. Foltz examined Ms. Woodrow in February of 2009. Although her examination results were largely normal, she had reduced sensation below Ms. Woodrow's right knee and 4 of 5 strength in her right lower extremity. Dr. Foltz assessed her as suffering from lower back pain and radiculopathy.

Dr. Khan reviewed MRI images of Ms. Woodrow lumbar spine in February, as well. Dr. Kahn observed mild degenerative changes of the lumbar spine, particularly involving L1-L2 down to L5-S1, with comparative posterior desiccated disk bulges, slightly worse on the left at L1-L2. She also had evidence of a transitional S1 vertebral body with lumbarization and a large Tarlow cyst at S2-S3 on the left with associated remodeling of adjacent bony structures. In April, a nerve conduction study was normal, showing no electro-diagnostic evidence of radiculopathy. Dr. Foltz examined Ms. Woodrow in May and found normal strength, coordination and gait but referred her to physical therapy and prescribed her Gabapentin for pain.

Ms. Woodrow saw Mr. Shoephoerster, a physician's assistant, for an August 2010 physical examination. He reported that her motor and sensory systems were grossly intact, but that she had a positive right straight leg raise test.

In October of 2010, Dr. Sathya reviewed a series of spine x-rays and found mild neural foraminal narrowing bilaterally at L5-S1 and a L1-L2 disk bulge with a small left disk protrusion which indented the ventral thecal sac and mildly displaced the descending left L2 nerve roots posteriorly.

One month later, Ms. Shields, a nurse practitioner, performed a physical examination and found that Ms. Woodrow had a right limp and decreased range of motion and tenderness to palpation in her lumbar spine, but otherwise had normal strength and reflexes with a negative Freiberg's test and no radiating pain.

In June of 2011, Ms. Woodrow saw Dr. Reitzenstein. On examination, he observed multiple joint pains, knee and ankle effusions, and muscle tenderness, but otherwise normal movement in her extremities. During a July appointment, he noted that she had muscle tenderness, but normal extremities movement and gait. Dr. Reitzenstein prescribed Flexeril for Ms. Woodrow.

A December physical examination performed by Mr. Edwards, a physician's assistant, was normal except for back tenderness. A right-hip x-ray taken that same month showed a femoral acetabular impingement.

Dr. Langford, a neurologist, examined Ms. Woodrow in February of 2012. She reported musculoskeletal pain and weakness, but during the examination, she had normal strength and gait but reduced reflexes, reduced sensation in her right leg and a positive straight leg raise on the right. Dr. Langford's assessment was radiculopathy, right greater than left.

One month later, Dr. Reitzenstein completed and signed a functional evaluation report. In it, he limited Ms. Woodrow to lifting 7 pounds occasionally, sitting for 1 hour at a time for up to 3 hours in a day and standing for 15 minutes at a time. Dr. Reitzenstein also checked a pair of boxes to indicate that Ms. Woodrow had both limited postural ability and limited use of her upper extremities. However, Dr. Reitzenstein left blank two sections addressing specific levels of limitation when stooping, squatting, crawling, kneeling, reaching, handling and fingering. Finally, Dr. Reitzenstein wrote that Ms. Woodrow's impairments were progressive since September 4, 2007, and checked the box "Yes" when asked "Have [Ms. Woodrow's] impairments been at the severity levels listed above since her motor vehicle accident on September 4, 2007?"

Ms. Woodrow submitted this last evaluation to the Appeals Council. In its Notice of Appeals Council Action, dated November 7, 2012, the Appeals Council wrote "[i]n looking at your case, we considered the reasons you disagree with the decision and the additional evidence listed on the enclosed Order of Appeals Council. We found that this information does not provide a basis for changing the [ALJ's] decision." The Appeals Council did not provide any further analysis of Dr. Reizenstein's opinion.

### III.     Issues Presented

Ms. Woodrow raises three challenges to the Commissioner's Decision: (1) the Appeals Council did not properly assess new evidence from Ms. Woodrow's treating physician; (2) the ALJ failed to properly evaluate Ms. Gerig's Functional Capacity Evaluation; and (3) the ALJ's RFC finding is not supported by substantial evidence. The Court finds that Ms. Woodrow's first challenge requires reversal and remand. As consideration of her treating physician's opinion may affect the ALJ's subsequent findings, the Court does not address Ms. Woodrow's second and third challenges.

### IV.     Standard of Review

Judicial review of the Commissioner of Social Security's determination that a claimant is not disabled within the meaning of the Social Security Act is limited to determining whether the Commissioner applied the correct legal standard and whether the decision is supported by substantial evidence. *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003); 42 U.S.C. § 405(g). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). On appeal, a reviewing court's job is neither to "reweigh the evidence nor substitute our judgment for that of the agency." *Branum v.*

*Barnhart*, 385 f.3d 1268, 1270, 105 Fed. Appx. 990 (10th Cir 2004) (*quoting Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)).

The Appeals Council must consider evidence submitted with a request for review if the additional evidence is new, material and related to the period on or before the date of the ALJ's Decision. 20 C.F.R. § 404.970(b). Whether evidence is new, material and related to the relevant period is a question of law subject to *de novo* review. *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004). However, when the Appeals Council accepts additional evidence, it makes an implicit determination that the evidence qualifies under § 404.970(b), requiring the Appeals Council to consider it and the reviewing court to include it in the review of the ALJ's Decision, without separate consideration of the requirements for qualification. *Krauser v. Astrue*, 638 F.3d 1324, 1328 (10th Cir. 2011) (*citing Martinez v. Barnhart*, 444 F.3d 1201, 1207-08 (10th Cir. 2006)).

If evidence submitted to the Appeals Council was new, material and related to the relevant period, but the Appeals Council did not consider the evidence, the case should be reversed and remanded for further proceedings. *Chambers*, 389 F.3d at 1142. Remand is appropriate if the Appeals Council failed to consider qualified evidence, even if there is other substantial evidence in the record supporting the ALJ's Decision. *Id*. at 1143. If the Appeals Council accepts into the administrative record a treating physician's opinion, the Council must apply the treating physician analysis (outlined in 20 C.F.R. § 404.1527) to the opinion. *Harper v. Astrue*, 428 F.App'x 823, 826-27 (10th Cir. 2011) (although Appeals Council included treating physician's opinion in administrative record and stated that this new evidence did not provide a basis for modifying the ALJ's Decision, reversal and remand was required because neither the Appeals Council nor the ALJ evaluated the treating physician's opinion).

When evaluating medical opinions, a treating physician's opinion must be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). The ALJ must give specific and legitimate reasons to reject a treating physician's opinion or give it less than controlling weight. *Drapeau v. Massanari*, 255 F.3d 1211 (10th Cir. 2001). Even if a treating physician's opinion is not entitled to controlling weight, it is entitled to deference and must be weighed using the following factors:

> 1) the length of the treatment relationship and the frequency of examination;
> 2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; 3) the degree to which the physician's opinion is supported by relevant evidence; 4) consistency between the opinion and the record as a whole; 5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and 6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003) (citation omitted); 20 C.F.R. § 404.1527(c).

Having considered these factors, the ALJ must give good reasons in the decision for the weight assigned to a treating source's opinion. *Id*. The ALJ is not required to explicitly discuss all the factors outlined in 20 C.F.R. § 404.1527. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). However, the reasons the ALJ sets forth must be sufficiently specific to make clear to subsequent reviewers the weight the ALJ gave to the treating source's medical opinions and the reason for that weight. *Watkins*, 350 F.3d at 1301.

In the administrative review process, harmless error is applied with caution. *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005). Harmless error may be appropriate where, based on material the ALJ considered, the court can confidently say that no reasonable

administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way. *Id*.

V.      **Discussion**

Ms. Woodrow first challenges the Appeals Council's consideration of Dr. Reitzenstein's functional evaluation report. She argues that the Appeals Council did not properly evaluate this evidence because the Council did not apply the treating physician opinion analysis (outlined in 20 C.F.R. § 404.1527) to this report. In response, the Commissioner argues that this Court cannot review the Appeals Council's evaluation of the evidence because the Council did not review Ms. Woodward's case, but rather allowed the ALJ's Decision to stand as written. The Court disagrees with the Commissioner and finds that Ms. Woodrow's first challenge requires reversal and remand.

In its Notice of Appeals Council Action, the Appeals Council specifically incorporated Dr. Reitzenstein's report into the record under consideration, but "…found that this information does not provide a basis for changing the [ALJ's Decision]." Dr. Reitzenstein's report was not discussed further by the Appeals Council.

Implicit in the Appeals Council's inclusion of Dr. Reitzenstein's report in the administrative record is the Council's acceptance of this report as new, material and timely evidence. *Krauser*, 638 F.3d at 1328. Having accepted this evidence into the administrative record, the Appeals Council was then required to adequately review it. *Chambers*, 389 F.3d at 1142. As the opinion of a treating physician, adequate review of Dr. Reitzenstein's report required application of the analysis outlined in 20 C.F.R. § 404.1527. *See Harper*, 428 F.App'x at 826-27. This analysis was not performed by the Appeals Council.

In some circumstances, a failure to address the effect of medical records submitted to the Appeals Council might be of little import. However, in the context of the record and the ALJ's Decision, consideration of Dr. Reitzenstein's opinion was required either by the Appeals Council, or upon remand, by the ALJ. Dr. Reitzenstein's opinion was expressly linked to the operative time period. It also was similar to another opinion that the ALJ rejected - Ms. Gerig's July 2008 functional capacity evaluation. The ALJ gave little weight to Ms. Gerig's opinion, in large part, because she was not a medical doctor, and that she had been hired to perform a functional evaluation. As the opinion of a treating physician, Dr. Reitzenstein's opinion suffers from neither of those limitations. Indeed, assessment of his opinion is subject to a different standard than that applied to Ms. Gerig's opinion.

The problem here is that the Appeals Council's determination does not reflect any specific consideration of Dr. Reitzenstein's opinion. In the absence of any apparent assessment of his opinion, the Court cannot find that the determination of the Appeals Council in affirming the Decision of the ALJ is sufficient or correct.

For the forgoing reasons, the Commissioner of Social Security's decision is **REVERSED** and **REMANDED** for consideration of Dr. Reitzenstein's opinion. The Clerk shall enter a Judgment in accordance herewith.

DATED this 28th day of January, 2014.

**BY THE COURT:**

_Marcia S. Krieger_

Marcia S. Krieger
United States District Judge